1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN S. for DANIEL W. B., | Case No.  CV 19-08016-PD |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW  M.  SAUL,  Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Daniel W. B. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is REVERSED, and the action is REMANDED.[1]

---

[1]    Daniel W. B. passed away on January 26, 2018, and his sister, Karen S., substituted in as a party to his DIB claim.  [Joint Stipulation ["JS"] at 2.]  Because the claim is on Mr. B.'s behalf, the references to "Plaintiff" in this Memorandum are to Mr. B.  Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II.    PROCEEDINGS BELOW

On May 9, 2016, Plaintiff protectively filed a Title II application for DIB alleging disability beginning September 10, 2014.  [Administrative Record ["AR"] 16, 148.]  His application was denied initially on August 24, 2016.  [AR 53-57.]  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 17, 2018.  [AR 29-43, 58-59.]  Plaintiff had passed away, so his sister, Karen S., who had substituted in as a party to Plaintiff's claim, appeared with counsel and testified, along with an impartial vocational expert ("VE").  [AR 29-43.]  On October 23, 2018, the ALJ found that Plaintiff had been under a disability, pursuant to the Social Security Act,[2] beginning on February 1, 2017, but had not been under a disability prior to that date.  [AR 24.]  The Appeals Council denied Plaintiff's request for review.  [AR 1-6.]  This action followed when Plaintiff filed an action in this Court on September 16, 2019.  [Dkt. No. 1.]

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 10, 2014, the alleged onset date ("AOD").  [AR 18.]  At step two, the ALJ found that Plaintiff had the following severe impairments:  lupus, Sjogren's syndrome, rheumatoid arthritis, and liver cirrhosis.  [*Id.*]  At step three, the ALJ found that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  [AR 19.]

---

[2]    Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

Before proceeding to step four, the ALJ found that prior to February 1, 2017, Plaintiff had the residual functional capacity ("RFC") to perform light work with occasional handling and fingering bilaterally.  [*Id.*]  The ALJ further found that beginning on February 1, 2017, Plaintiff had the RFC to perform sedentary work with occasional handling and fingering bilaterally.  [AR 21.]  At step four, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work.  [AR 22.]  At step five, the ALJ found that prior to February 1, 2017, Plaintiff could perform other jobs that existed in significant numbers in the national economy; beginning on February 1, 2017, however, Plaintiff could not perform other jobs that exited in significant numbers in the national economy.  [AR 22-23.]  Accordingly, the ALJ found that Plaintiff was not disabled prior to February 1, 2017 but became disabled on that date and continued to be disabled through the date of his death.  [AR 23.]

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.  DISCUSSION

Plaintiff raises the following arguments:  (1) the ALJ erred in determining Plaintiff's RFC prior to February 1, 2017; (2) the ALJ erred in rejecting Plaintiff's allegations regarding his subjective symptoms and functional limitations prior to February 1, 2017; and (3) the ALJ erred in finding at step five that he had the ability to perform jobs existing in significant numbers in the national economy prior to February 1, 2017.  [JS at 3-7, 15-20, 27.)  The Commissioner asserts that the ALJ's decision should be affirmed.  [JS at 7-15, 20-29.)  As set forth below, the Court agrees with Plaintiff, if part, and remands for further proceedings.

### A.  Plaintiff's RFC Prior to February 1, 2017

#### 1.  Plaintiff's Allegations

Plaintiff contends that the ALJ erred in determining his RFC prior to

February 1, 2017, arguing it was "arbitrary and contrary to the substantial evidence in the record." [JS at 3.] Specifically, Plaintiff argues that the ALJ improperly evaluated the treating opinions of Richard Lander, M.D. and William Martin, M.D. in determining that Plaintiff could perform light work prior to February 1, 2017. [JS at 4-6.] Plaintiff further argues that the ALJ should have consulted with a medical expert to make an informed judgment regarding the onset date. [JS at 6-7.]

## 2.    Applicable Legal Standards

In assessing a claimant's RFC, the ALJ is required to consider all limitations and restrictions imposed by all impairments, even those deemed not severe. *See* Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). The RFC reflects the most a claimant can do despite his limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence," including any statements provided by medical sources. 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3), 404.1546(c). An ALJ's determination of a claimant's RFC must be affirmed if the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

An ALJ must consider all medical opinions of record. 20 C.F.R. § 404.1527(b).[3] Courts give varying degrees of deference to medical opinions

---

[3]    Section 404.1527 applies because Plaintiff filed his application before March 27, 2017. For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. The new regulations changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference

based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally given the most weight and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

to treating source medical opinions. *See* 20 C.F.R. § 404.1520c(a); *see also* 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

### 3.   Discussion

Here, the medical opinion evidence consists of an opinion from a State Agency non-examining doctor, E. Christian M.D, and opinions from Plaintiff's treating internal medicine physician, Dr. Lander, and Plaintiff's treating rheumatologist, Dr. Martin.  [AR 20-21, 390-98.]

On August 11, 2016, the State Agency review physician, Dr. Christian, opined that Plaintiff could perform a range of light work.  [AR 48-49.]

On February 14, 2017, Dr. Lander opined in a letter "To Whom It May Concern" that Plaintiff is "disabled from any employment."  [AR 390.]  Dr. Lander explained that due to muscle weakness and wasting and joint pain associated with Plaintiff's systemic lupus erythematosus, rheumatoid arthritis, and Sjogren's syndrome, Plaintiff's physical activity and ability to function were "severely limited."  [*Id.*]   Dr. Lander opined that due to his impairments, Plaintiff would require frequent unscheduled breaks of 15-20 minutes or more per hour and unscheduled days off of more than 5-6 days per month.  [*Id.*]

On that same date, Dr. Lander completed a physical RFC questionnaire.  [AR 391-94.]  He noted that he had been Plaintiff's primary care physician for 12 years and had seen him "more frequently" in the last two and a half years.  [AR 391.]  He diagnosed Plaintiff with systemic lupus erythematosus, rheumatoid arthritis, and Sjogren's syndrome.  [*Id.*]  He described Plaintiff's symptoms of weakness and pain in the hands and legs and cited clinical findings of muscle wasting and weakness in the hands, arms, and legs.  [*Id.*]  Plaintiff could occasionally lift and/or carry less than 10 pounds, could stand and/or walk less than two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday.  [AR 392.]  Plaintiff's ability to push and/or pull was limited in the upper and lower extremities due to weakness and pain in his extremities, and Plaintiff could never bend, climb, crouch,

balance, kneel, crawl, reach, handle, or finger.  [AR 393.]  Plaintiff would need to frequently change position and would need to take unscheduled breaks during an eight-hour workday.  [AR 392.]  Plaintiff's impairments would cause him to be absent more than three times a month.  [*Id.*]

On March 1, 2017, Dr. Martin completed a physical RFC questionnaire. [AR 395-98.]  He indicated that he had provided Plaintiff with rheumatology care every two to three months over the past one and a half years.  [AR 395.] He diagnosed Plaintiff with lupus, Sjogren's, rheumatoid arthritis, and cirrhosis.  [*Id.*]  He described Plaintiff's symptoms as "debilitating joint pain, particularly hands/hips, constant, exacerbated by activity, severe."  [*Id.*]  He identified clinical findings of joint tenderness/swelling, and elevated markers of inflammation.  [*Id.*]  Plaintiff could occasionally lift and/or carry less than 10 pounds and could stand and/or walk about two hours in an eight-hour workday.  [AR 396.]  Plaintiff could sit less than six hours in an eight-hour workday.  [*Id.*]  Plaintiff's ability to push and/or pull was limited in the upper and lower extremities due to severe hand and hip pains.  [AR 397.]  Plaintiff could occasionally bend, kneel or reach, and could never climb, crouch, balance, crawl, handle or finger.  [*Id.*]  Plaintiff would need to shift positions at will and would need to take unscheduled breaks "at least 30 minutes per hour."  [AR 396.]  Plaintiff's impairments would cause him to be absent from work more than three times a month.  [*Id.*]

For the period prior to February 1, 2017, the ALJ gave the State Agency opinion "some weight," finding the opinion "broadly consistent" with the evidence at the time of the review, but inconsistent with subsequent evidence that "establishes that [Plaintiff] is slightly more limited than initially assessed."  [AR 20, 48-49.]

For the period beginning on February 1, 2017, the ALJ gave "some weight" to the treating opinions, finding them "broadly consistent" with

Plaintiff's treatment notes that showed severe muscle wasting and that Plaintiff required care for many of his personal needs. [AR 21.] The ALJ noted that the treating opinions were signed after February 1, 2017 and did not specify a period to which their opinions applied. [*Id.*]

The Court finds that the ALJ's reasons for discounting the treating opinions, which were contradicted by the non-examining State Agency doctor, are not specific and legitimate and supported by substantial evidence prior to February 1, 2017. For this period, the ALJ failed entirely to discuss the treating opinions, let alone explain why he rejected them in favor of the non-examining State Agency doctor's opinion. [AR 19-21.] This was error. *See Orn*, 495 F.3d at 633; *see also Smolen*, 80 F.3d at 1286 ("By disregarding [treating physician's and specialist's] opinions and making contrary findings, [the ALJ] effectively rejected them."). To the extent the ALJ concluded that the treating opinions supported a finding of a sedentary RFC only beginning on February 1, 2017 because "these opinions were all signed after February 1, 2017, the established onset date," the ALJ's reasoning is flawed. Neither Dr. Lander nor Dr. Martin limited his opinion to February 1, 2017 forward, and they had been treating Plaintiff frequently in the past two and a half years and one and a half years, respectively. [AR 390-98.] Dr. Lander described Plaintiff's diseases as progressive and noted clinical findings of muscle wasting and weakness in the hands, arms and legs, and Dr. Martin noted findings of joint tenderness/swelling and elevated markers of inflammation. [AR 391, 395.] There is support in the record for these findings prior to February 1, 2017. [AR 253, 279, 299, 304, 415, 417, 447, 466, 471, 473.] If the ALJ found the treating opinions contradicted by the treating physicians' own treatment notes, he did not say so or explain why. *Cf. Bayliss*, 427 F.3d at 1216 (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment).

1  The Commissioner cites various treatment notes and argues that the
2  record supports the ALJ's finding of February 1, 2017 as the date of Plaintiff's
3  onset of disability.  [JS at 8-12.]  The ALJ, however, did not cite these
4  treatment notes to justify the rejection of the treating opinions prior to
5  February 1, 2017.  The ALJ failed to provide specific and legitimate reasons
6  based on substantial evidence of record for rejecting the treating opinions
7  prior to February 1, 2017.[4]

8  Despite the Commissioner's argument to the contrary, the ALJ's error is
9  not harmless.  If the ALJ had given the treating opinions controlling weight or
10  had credited the statements as true for the period prior to February 1, 2017,
11  the outcome would have been different.  *See Stout v. Comm'r, Soc. Sec.*
12  *Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if it is
13  inconsequential to the ultimate nondisability determination).  With a
14  sedentary RFC and no transferrable skills, Plaintiff would be disabled per
15  Medical-Vocational Rule 201.14.  In addition, the VE testified that a
16  hypothetical person could not perform any work if the individual had to take a
17  break every hour for 15 or more minutes or had to miss two or more workdays
18  per month on a continuing basis.  [AR 41-42.]

19  In sum, the Court finds that the ALJ did not properly consider the
20  treating medical opinion evidence in assessing Plaintiff's RFC prior to
21  February 1, 2017, and remand is warranted.  On remand, the ALJ should re-
22  evaluate the treating medical opinion evidence in assessing Plaintiff's RFC
23  prior to February 1, 2017, and if appropriate, provide specific and legitimate

24  _____

25  [4]      Plaintiff also argues that the ALJ implicitly rejected the portions of the
26  treating opinions limiting Plaintiff to less than sedentary work.  [JS at 5.]
   The Court agrees.  On remand, the ALJ must provide specific and legitimate
27  reasons supported by substantial evidence in the record if he rejects the
28  treating opinions.

1  reasons supported by substantial evidence for discounting such opinions.[5]

2  **B.    Plaintiff's Subjective Symptoms and Functional Limitations Prior to February 1, 2017**

3  Plaintiff contends that the ALJ improperly rejected Plaintiff's

4  allegations regarding his subjective symptoms and functional limitations prior

5  to February 1, 2017, failing to provide any specific, clear and convincing

6  reasons supported by substantial evidence in the record.  [JS at 15-20.]

7  **1.    Plaintiff's Allegations**

8  In a Disability Report, Plaintiff alleged that he could not work due to

9  rheumatoid arthritis, Sjogren's syndrome, systemic lupus, and cirrhosis of

10  liver without ascites.  [AR 167.]  In an Exertion Questionnaire, dated June 4,

11  2016, Plaintiff indicated he suffers from chronic pain.  [AR 190.]  He could lift

12  his medication twice a day and could carry himself not far.  [AR 191.]  He

13  could drive a car for 40 minutes, but could no longer do his own grocery

14  shopping, clean his house, or work in the yard.  [*Id.*]  He requires rest periods

15  or naps during the day.  [AR 192.]  In a Disability Report – Appeal, Plaintiff

16  indicated that his rheumatoid arthritis symptoms and lupus condition had

17

18  _____

19  [5]    The Court finds that the ALJ was not obligated to consult a medical expert.  "[I]n circumstances where the ALJ must determine the date of disability onset and medical evidence from the relevant time period is unavailable or inadequate, SSR 83-20 states that the ALJ should call a medical advisor."  *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).  However, "[SSR 83-20's] language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred."  *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017) (quoting *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995)).  As the Commissioner notes, SSR 83-20 was rescinded and replaced with SSR 18-1p in October 2018, which clarifies that the ALJ "may, but is not required to, call upon the services of a medical expert" to assist in determining the onset date.  [JS at 13 n.6] (citing SSR 18-1p, 2018 WL 4945639, at *2 (Oct. 2, 2018)).  Here, the medical records give an adequate chronology of Plaintiff's conditions, and Plaintiff does not contend otherwise.  On remand, the ALJ may, but is not required to, call a medical expert to assist in determining the onset date.

1   continued to worsen as of June 30, 2016.  [AR 198.]

2       At the hearing, Plaintiff's sister testified that Plaintiff stopped working

3   because "he couldn't perform his daily functions anymore," "[h]e couldn't lift

4   anything," "[he] was fatigued," "[h]e would need to sleep all the time," "[h]e was

5   taking the medication," and "[h]is hands were always in pain."  [AR 35.]  She

6   witnessed him getting out of breath from walking ten feet.  [AR 36.]  He

7   "constantly had to stop, sit and then continue to move."  [*Id.*]  Plaintiff pretty

8   much slept "most of the time" and his girlfriend did "everything" for him, such

9   as cooking, cleaning, and helping him bathe.  [*Id.*]  Plaintiff moved in with his

10  sister in September 2017 and "he would sleep for two days."  [*Id.]*  Plaintiff's

11  sister and her daughter "basically did everything for him."  [AR 36-37.]

12  Plaintiff's symptoms were still debilitating with medication.  [AR 37.]  When

13  Plaintiff lived with his sister, he was not doing well and was not drinking at all.

14  [AR 38.]  In the past, he had consumed a six-pack a day of Coors Lite.  [*Id.*]

15              **2.    Applicable Legal Standards**

16      "In assessing the credibility of a claimant's testimony regarding

17  subjective pain or the intensity of symptoms, the ALJ engages in a two-step

18  analysis."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing

19  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must

20  determine whether the claimant has presented objective medical evidence of

21  an underlying impairment which could reasonably be expected to produce the

22  pain or other symptoms alleged."  *Treichler v. Comm'r of Soc. Sec. Admin.*,

23  775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036)

24  (internal quotation marks omitted).  If so, and if the ALJ does not find

25  evidence of malingering, the ALJ must provide specific, clear and convincing

26  reasons for rejecting a claimant's testimony regarding the severity of his

27  symptoms.  *Id*.  The ALJ must identify what testimony was found not credible

28  and explain what evidence undermines that testimony.  *Holohan v.*

12

1  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are

2  insufficient."  *Lester*, 81 F.3d at 834.

3      SSR 16-3p governs the evaluation of subjective symptoms and instructs

4  the ALJ to "consider all of the evidence in an individual's record," "to

5  determine how symptoms limit ability to perform work-related activities."

6  SSR 16-3p, 2017 WL 5180304 at *2 (Oct. 25, 2017) (SSR 16-3p was "applicable

7  [rather than effective] on March 28, 2016"). The Ninth Circuit has noted that

8  SSR 16-3p is consistent with its prior precedent.  *See Trevizo v. Berryhill*, 871

9  F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth

10  Circuit] precedent already required").

11      **3.    Discussion**

12      For the period prior to February 1, 2017, the ALJ found Plaintiff's

13  subjective allegations to be "partially consistent with the record as a whole."

14  [AR 20.]  The ALJ noted that the treatment notes show that Plaintiff

15  admitted to driving a motor vehicle and chopping wood, which "are generally

16  inconsistent with the degree of functional limitation alleged."  [*Id.*]

17      Inconsistencies between symptom allegations and daily activities may

18  act as a clear and convincing reason to discount a claimant's credibility.  *See*

19  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v.*

20  *Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But a claimant need not be

21  utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th

22  Cir. 1989).  "If a claimant is able to spend a substantial part of his day

23  engaged in pursuits involving the performance of physical functions that are

24  transferable to a work setting, a specific finding as to this fact may be

25  sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec.*

26  *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d

27  1044, 1050 (9th Cir. 2001).

28

The record supports that Plaintiff admitted to driving a motor vehicle and chopping wood, but the activities took place both prior to February 1, 2017 and after. [AR 191, 225, 489.] The ALJ fails to explain why he discounted Plaintiff's allegations regarding his subjective symptoms and functional limitations based on those activities prior to February 1, 2017 but not after. Further, the fact that Plaintiff admitted to driving a motor vehicle and chopping wood is not inconsistent with his allegations because the record does not show that such activities consumed a substantial part of Plaintiff's day. *See Morgan*, 169 F.3d at 600. This reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective statements.

The ALJ found that the treatment notes "partially" support Plaintiff's allegations of chronic pain and fatigue. [AR 21.] The ALJ did not specify what treatment notes were inconsistent with Plaintiff's allegations and what parts of Plaintiff's allegations were not credible. Further, to the extent the ALJ discounted Plaintiff's subjective statements due to a lack of supporting objective medical evidence, this reason cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

To the extent the Commissioner argues that the ALJ properly discounted Plaintiff's testimony prior to February 1, 2017 due to conservative treatment, the argument is rejected. The conservative nature of a claimant's treatment may factor into the evaluation of a claimant's subjective complaints. *See Tommasetti*, 533 F.3d at 1039-40. The ALJ mentioned avoidance of sun exposure and the use of topical ointments for a rash and did not appear to discount Plaintiff's subjective statements based on his treatment of his rash. [AR 20.] Even if he did, this reason would not be a

clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective statements.  The rash was a side effect from a medication that he briefly took for his rheumatoid arthritis, and Plaintiff did not allege pain or functional limitations due to the rash.  [AR 254-55, 451, 454.]

The Commissioner argues that the ALJ noted that Plaintiff was noncompliant with specific instructions from his doctors that he avoid alcohol.  [JS at 2 (citing AR 20, 250, 259, 265, 406, 415, 417, 426, 439).]  An ALJ "may consider . . . unexplained or inadequately explained failure . . . to follow a prescribed course of treatment."  *See Molina*, 674 F.3d at 1112.  The ALJ did mention that Plaintiff was instructed to avoid alcohol, with admitted instances of non-compliance, but did not appear to discount Plaintiff's subjective statements based on such non-compliance.  [AR 20.]  Even assuming he did, this reason is not clear and convincing, supported by substantial evidence, because the record indicates that Plaintiff "may be drinking in excess" even after February 1, 2017 [AR 515] and the ALJ did not explain why the non-compliance would erode Plaintiff's credibility prior to February 1, 2017 but not after.

In sum, the Court concludes that the ALJ failed to properly evaluate Plaintiff's allegations regarding his subjective symptoms and functional limitations prior to February 1, 2017.  Accordingly, remand is warranted on this issue.  On remand, the ALJ should re-evaluate Plaintiff's allegations regarding his subjective symptoms and functional limitations prior to February 1, 2017, and if appropriate, provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's allegations.[6]

---

[6]     Plaintiff also contends that the ALJ failed to adequately consider the lay testimony of Plaintiff's sister, Karen S., for the period prior to February 1, 2017.  [JS 19-20.]  Given that the ALJ did not mention her testimony for the period prior to February 1, 2017, the Court agrees.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of

C.     **The ALJ's Step Five Finding**

Plaintiff contends that the ALJ also erred at step five because the step five finding was based on the ALJ's erroneous determination that Plaintiff had the RFC for light work prior to February 1, 2017.  [JS at 27.]  In light of the fact that the Court is remanding the case for the reasons set forth above, the ALJ shall proceed through the sequential steps and, if necessary, reconsider this issue on remand.

Plaintiff requests that the case be remanded for an award of benefits. [JS at 29.]  The Court recognizes that it has the authority to do so but finds that such relief is not warranted here, because it is not clear that Plaintiff was disabled prior to February 1, 2017, and if so, when he became disabled. *See Trevizo*, 871 F.3d at 682.

---

the lay witnesses, he must give reasons that are germane to each witness."). Contrary to the Commissioner's argument, the error is not harmless.  [JS at 25.]  The ALJ did not give sufficient reasons for discounting Plaintiff's subjective allegations prior to February 1, 2017; therefore, even assuming the lay testimony was similar to Plaintiff's allegations, it does not follow that the ALJ gave germane reasons for discounting the testimony of Karen S.  *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony.").  On remand, the ALJ should re-evaluate the testimony of Karen S., and if appropriate, provide germane reasons for discounting her testimony regarding the period prior to February 1, 2017.

16

## V.    CONCLUSION

For the reasons set forth above, the decision of the Commissioner is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion.

It is further ordered that the Clerk of the Court serve copies of this Memorandum Opinion and Order and the Judgment on counsel for both parties.

DATED:  July 27, 2020

_____

PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

17